IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 02-00206-01-CR-W-ODS |
| ROBERT DOWDY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT
FOR POST-INDICTMENT DELAY**

Before the court is defendant's motion to dismiss the indictment on the ground that he was indicted on August 6, 2002, but he was not arrested until April 19, 2008, partly because his arrest warrant was not entered into the National Crime Information Center until October 10, 2007. I find that there exists a presumption of prejudice from the delay and that the government has failed to rebut that presumption. Therefore, defendant's motion to dismiss should be granted.

*I.     BACKGROUND*

On August 6, 2002, an indictment was returned charging defendant with nine counts of distributing crack cocaine and one count of possession with intent to distribute cocaine. Defendant was arrested on April 19, 2008. He filed the instant motion to dismiss the indictment on August 28, 2008 (document number 22).

On September 5, 2008, the government filed a response to defendant's motion (document number 24). The government argues that defendant's motion should be denied as he cannot show actual prejudice from the delay.

I held a hearing on September 24, 2008. The order setting the hearing stated in part as follows:

> Neither party requested an evidentiary hearing. During my analysis of the motion, I have determined that an evidentiary hearing is required on the issue of what measures law enforcement took to find defendant both after the indictment was returned and after the warrant was entered into NCIC, as well as evidence of defendant's whereabouts during the time subsequent to the indictment.

Defendant appeared in person, represented by Assistant Federal Public Defender Robert Kuchar. The government was represented by Assistant United States Attorney Kathleen Mahoney. During the hearing, the parties offered a stipulation of facts in lieu of calling witnesses. In addition, the following exhibits were offered by defendant and admitted:

- D. Ex. 1  Sentence, judgment, and discharge papers for case no. 16CR03001001-01
- D. Ex. 2  Sentence, judgment, and discharge papers for case no. CR-02-04335
- D. Ex. 4  Order of discharge from probation in case no. 0616-CR06006

Finally, defendant made the following proffer: Defendant, from August 2002 through April 19, 2008, lived at 6119 East 107th Terrace, Kansas City, Missouri, with his mother, Mary Gray. He occasionally stayed with his grandmother at 244 Wabash, Kansas

City.  Until the present day, defendant has stayed at either of these two residences.  Defendant was working from August 6, 2002 (the date of his indictment) until the present date in Kansas City, Missouri, or Gladstone, Missouri, at temporary agencies. There were numerous court appearances in Jackson County, Missouri, from 2002 through 2005.  Defendant participated in counseling and drug screens, he physically reported to his probation officer weekly at first and then later monthly.  He was physically present in the probation office.  His final sentence of probation which expired and was dismissed on February 1, 2008, involved unsupervised probation for DWI.

No other evidence was offered by either party.

## II. *POST-INDICTMENT DELAY*

Post-indictment delay is examined under the test set forth in Barker v. Wingo, 407 U.S. 514 (1972).  In Barker, the Supreme Court adopted a balancing test that requires courts to approach speedy trial cases on an ad hoc basis.  Id. at 530.  The Court identified four factors that should be considered in determining whether a particular defendant has been deprived of his Sixth Amendment right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant.  Id.  None of these factors is regarded as either a necessary or sufficient condition to the finding of a violation

3

of the right to a speedy trial. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533. See also United States v. Richards, 707 F.2d 995, 997 (8th Cir. 1983). The first three factors "should be used to determine whether the defendant bears the burden to put forth specific evidence of prejudice or whether it is presumed. United States v. Bergfeld, 280 F.3d 486, 490 (5th Cir. 2002).

The first factor, the length of delay, serves as a triggering device. Unless there is some delay that is presumptively prejudicial, an inquiry into the other factors is unnecessary. Barker, 407 U.S. at 530. In this case, there was a delay of approximately five years and eight months. The government concedes that this is presumptively prejudicial. See United States v. Richards, 707 F.2d 995, 997 (8th Cir. 1983) (35 months between indictment and arrest is presumptively prejudicial).

The second factor to be considered is the reason for the delay. The Barker Court identified three types of reasons and the varying weights to be assigned to each. Deliberate attempts by the government to delay the trial and hamper the defense are weighed heavily against the government. Barker, 407 U.S. at 531. On the other end of the spectrum, a valid reason for delay provides justification for delay. Id. In the middle of the

4

continuum is government negligence, which "should be weighted less heavily [than bad faith] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id.

Here, the reason for most of the delay in the arrest was that the government failed to put defendant's arrest warrant into the NCIC computer system until October 2007, five years and two months after the indictment was returned. The government concedes that this factor weighs in favor of defendant.

The third factor in the Barker balancing test -- the defendant's assertion of his right -- has no application here. A defendant cannot invoke his right to a speedy trial until he knows criminal charges have been filed. The stipulated evidence establishes that defendant was unaware of the pending charges until the day he was arrested. Consequently, his failure to assert his right to a speedy trial until August 28, 2008, cannot be weighed against him.

The fourth factor to be considered is the prejudice to the defendant. The Supreme Court stated in Barker that the prejudice to the defendant should be assessed in light of the interests that the speedy trial right was designed to protect. These interests include: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern on the part of

5

the accused, and (3) limiting the possibility that the defense will be impaired. See Barker, 407 U.S. at 532. In this case, defendant was neither incarcerated nor aware of the drug charges against him until his arrest on April 19, 2008. Therefore, the first two factors are not relevant in this case.

A claim of trial prejudice may arise if a key defense witness or valuable evidence is lost, if the defendant is unable credibly to reconstruct the events of the day of the offense, or if the personal recollections of the government or defense witnesses are impaired, because if any of these events occur the reliability of the proceedings for the purpose of determining guilt becomes suspect. United States v. Feinberg, 383 F.2d 60, 65-66 (2nd Cir. 1967).[1]

Defendant argues that he was prejudiced in two ways by the delay of his arrest: (1) Defendant does not have the ability to cooperate and try to earn a reduction of his sentence pursuant to 5K1.1 because information he would have offered is now seven years old and likely would not be of assistance, and (2) during the time in question defendant was convicted for other crimes, and had he been timely arrested and prosecuted in this case, he "could have" served all of the sentences at the same time.

---

[1] This case is cited with approval by Magistrate Judge David Piester, District of Nebraska, in a Report and Recommendation filed on June 5, 2007 (2007 WL 1825176), United States v. Erenas-Lunas. I have not been able to find an order adopting the R&R.

6

Defendant does not allege that any witnesses or evidence are missing or that he cannot reconstruct or remember the events charged in the indictment.

The government correctly points out in its response that no defendant, no matter how early he is arrested after a charge is brought, is ever entitled to an opportunity to cooperate, much less a motion for downward departure at sentencing. <u>United States v. Fields</u>, 512 F.3d 1009, 1012 (8th Cir. 2008).

Defendant provides no authority for his argument that he was prejudiced because he committed additional crimes and, had he been prosecuted timely, he could have served all of his sentences at the same time. There is no right to concurrent sentences, and defendant's argument is entirely speculative in that regard. And the government's additional response is duly noted, i.e., that "the Sixth Amendment to the Constitution is not in place to protect Dowdy's right to commit repeated crimes without incurring any additional penalty."

Defendant's main argument, however, is not that he suffered the prejudice outlined above. Instead, defendant argues that an affirmative demonstration of prejudice is unnecessary because of the sheer length of the delay in this case, citing <u>Doggett v. United States</u>, 505 U.S. 647 (1993).

In <u>Doggett</u>, the defendant was indicted in 1980 on federal drug charges but left the country before his arrest. DEA was

7

aware he was imprisoned in Panama and requested that he be expelled back to the United States, but never followed up. Meanwhile Doggett was released, re-entered the United States, and lived openly under his own name until 1988 when he was arrested after the United States Marshal performed a simple records check.

The Supreme Court ordered that the indictment be dismissed for post-indictment delay. "To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8 1/2 years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays 'extraordinary.'" 505 U.S. at 657. The Supreme Court held that when the presumption of prejudice is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief. Id. at 658. As mentioned above, because the first three factors together weighed more in Doggett's favor, he did not have the burden of putting forth specific evidence of

8

prejudice, rather it was presumed. The government failed to rebut that presumption.

In United States v. Shell, 974 F.2d 1035 (9th Cir. 1992), the defendant's file was misplaced for five years and the government made no attempt to locate him. At the end of that five years, a new search began for Shell, and the government located and arrested him in Guam the following year. The court of appeals found no distinction from the facts of Doggett. "Five years delay attributable to the government's mishandling of Shell's file, like the eight year delay in Doggett, creates a strong presumption of prejudice. Nor has the government 'persuasively rebutted' the presumption of prejudice. It suggests that because Shell has conceded that most of the essential witnesses and documentary evidence is still available, the presumption of prejudice is rebutted. We are not persuaded. Although the Court did not define precisely what type of evidence must be shown to rebut the presumption, we have little doubt that the government has failed to meet its burden here." Id. at 1036.

In United States v. Shelton, 820 F. Supp. 461 (W.D. Mo. 1992), there was a 26-month delay between indictment and arrest because the government had moved to seal the indictment and the arrest warrant, then did nothing to apprehend the defendant. The government "did not, and presumably could not, produce evidence that any attempt was made to apprehend the defendant during the

9

two year period. . . .  The government put on no evidence of what procedures the United States Attorney's office utilizes to make sure they fulfill their duty to bring a case to trial as expeditiously as possible.  In essence, the government failed to make a showing that the delay in this case was reasonable."  Id. at 466.  Because the government was unable to rebut the presumption of prejudice, the indictment was dismissed.

In United States v. Bergfeld, 280 F.3d 486 (5th Cir. 2002), more than five years elapsed between indictment and arrest. During that time, the government's pursuit of the defendants amounted to its initial inquiry about whether they could be extradited.  The court held that the government failed to rebut the presumption of post-indictment delay prejudice, and the indictment was dismissed.

If the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice.  Doggett, 505 U.S. at 656. For example, in United States v. Villarreal, 2008 WL 1995042 (N.D. Fla., May 7, 2008), there was a nearly ten-year delay between indictment and arrest.  During that time, authorities went to Villarreal's residence in Texas and his place of employment.  They were told that Villarreal had fled to Mexico. They sent him a notice of seizure and intended forfeiture of his tractor-trailer, but he failed to respond.  The arrest warrant

10

had been entered into NCIC shortly after indictment.  The Marshal verified each year that the warrant was still active in NCIC.  Each year, the Marshal unsuccessfully searched NCIC and Auto Track (processes information about real estate and business transactions, address changes, and vehicle registrations) for information about Villarreal's whereabouts.  Authorities returned to Villarreal's purported residence and were told by neighbors they had not seen him in quite a while.  They contacted Homeland Security and requested that a border lookout be placed on Villarreal.  One of Villarreal's former business acquaintances said his family members had said Villarreal lived in Mexico because he was wanted by authorities in the United States.

The court found that the efforts by the government to locate Villarreal were not negligent.  In distinguishing the case from <u>Doggett</u> in this respect, the court denied Villarreal's motion to dismiss the indictment based on post-indictment delay.

In this case, the only evidence offered by the government to show what measures were taken to locate defendant after the indictment was a stipulation of facts which reads as follows:

> 1.   On August 6, 2002, Mr. Dowdy was indicted for ten counts of possession[2] of cocaine with intent to distribute in violation of 21 [U.S.C. §] 841.

---

[2]The indictment actually charges nine counts of distributing crack cocaine and one count of possession with intent to distribute.

11

2. After the indictment was filed, the warrant for the arrest of Mr. Dowdy was not entered into the National Crime Information Center (N.C.I.C.) until October 10, 2007.

3. As [a] result of the warrant not getting entered into the system until October 10, 2007, the authorities did not attempt to locate and arrest Mr. Dowdy.

4. On April 19, 2008, Mr. Dowdy was arrested on the federal warrant during a routine traffic stop.

5. Between August 6, 2002, and April 19, 2008, Mr. Dowdy:

   i) lived and worked in the Kansas City Metropolitan area;

   ii) had two pending cases in Jackson County, Missouri (for which he appeared in the Jackson County courthouse on a regular basis);

   iii) successfully completed two separate state court probations (for which he met with his probation officer as directed); and

   iv) had a few contacts with law enforcement (he was cited for three moving violations.)

[6]. Mr. Dowdy was unaware that he was indicted or charged with any of the pending crimes until he was arrested in April of 2008.

There is no evidence that law enforcement went to defendant's residence or his place of employment, either before the warrant was entered into NCIC or after. In fact, defendant's eventual arrest was effected during a routine traffic stop, not as a result of any effort by law enforcement to execute the five-year-old arrest warrant.

I find that the facts of this case cannot be distinguished from the facts of Doggett. The government concedes that the

12

first three factors enunciated in Barker v. Wingo favor the defendant.  This means that there is no question that there is a presumption of prejudice which the government must rebut, and that the defendant has no burden to establish actual prejudice.

Because the government has not shown that it did anything to find defendant during the nearly six years between his indictment and his arrest, it has failed to rebut the presumption of prejudice and, according to Doggett v. United States, 505 U.S. at 658, defendant is entitled to relief.

### *III. CONCLUSION*

Because the government has failed to rebut the presumption of prejudice from the post-indictment delay, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order granting defendant's motion to dismiss the indictment on the ground of post-indictment delay.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days to file and serve specific objections.

                    */s/ Robert E. Larsen*
                    ROBERT E. LARSEN
                    United States Magistrate Judge

Kansas City, Missouri
September 24, 2008